Your Honors, may I please the Court. My name is Albert Young. I have been appointed counsel through the Ninth Circuit Pro Bono Program for Petitioner Brenda Montano, in this case. Because of the somewhat unusual facts in this case, I thought I would start by giving some – oh, I'd like to also reserve two minutes, please. I'd like to provide some background context for the Court before delving into the relief that Ms. Montano seeks before the Court. And when you do, would you please focus on whatever the status is of this Catholic Services circumstance? It sounds like you've gotten some relief, and we need to understand how that – The VAWA petition. On the VAWA petition? Absolutely. I'm sorry, on the VAWA petition? Yes. Certainly in Ms. Montano's short life, she's had to endure a lot. She has been brought into this country at a young age. She's built her life here. She's been in removal proceedings for a very long time. And during the course of those removal proceedings, she has obtained an approved I-360. It was approved by United States Citizenship and Immigration Services. And what that means is that this executive agency, which has been given the specific duty of determining which applicants under the Violence Against Women Act are actually eligible to adjust their status under VAWA, they've determined that she is eligible to apply for an adjustment of status. She's eligible to apply, but I gather she can't as long as she's in removal proceedings. Is that correct? That's right, Your Honor. Because of a fluke of proceedings, because of the long course of the removal proceedings, and because of the unusual circumstances of this case, the remedy that we're asking the Court to effectuate is actually what CIS has determined she's originally based on a good-faith marriage. Obviously, the correct remedy in this case would not be for her to go back to her abusive husband. Because there has been this intermittent determination that she's eligible to apply under VAWA for relief, we're asking for this Court to intervene in one of two ways. First, with an instruction to reopen so that Ms. Montano can go before the IJ and adjust her status, which would be the normal course for her. Or in the alternative, if the Court is not going to reopen proceedings, at the very least, instruct the BIA to reissue. And what I mean by that is reissue a valid order of removal that corrects for the Padilla problem that was identified in the Rule 28J letter. Let me ask you this. Why can't she, maybe with the government's help, because I'm going to ask the BIA to do a motion, a joint motion to reopen. Is there a time problem here? For a joint motion to reopen, no, Your Honor, because under the VAWA provisions, a joint motion to reopen is accepted from any time bars. And a joint motion to reopen would be one potentially logical way to resolve, an efficient way to resolve this. This was broached with the government early on to see if we could save this Court some time in not having to do that. The government expressed no interest in that whatsoever. So we need the Court's intervention today because we need either. When did they express no interest in doing that? Was that before approval from the CIA, from citizenship? It was after. After we had shown the approved petition. And actually, if you go backward into the excerpts of record, or not the excerpts of record, but the procedural history, you'll see that actually we filed a motion for a temporary stay of proceedings here so that maybe we could file a motion to reopen under VAWA. But it was clear from the government's papers throughout the Ninth Circuit proceedings that not only would they not join a motion to reopen before the BIA, that they were intent on relitigating procedural roadblocks to keep Ms. Montano from getting relief, despite the fact that a sister agency had already determined that she was eligible for the underlying relief. Now, the docket sheet reflects that this went to mediation. That's right. Now, was this issue of VAWA eligibility raised in the mediation process? From my recollection, and my understanding is that the counsel today for the government is not actually, it's not actually the counsel that was engaged in those mediations, but the first disclosure of... I can't get into what happened in mediation. Yeah. I just want to know if it was, I just want to know if it was, timing-wise. Timing-wise, the VAWA issue, the domestic violence, occurred during the mediation, and even after we got the approval. We actually got both a prima facie eligibility from CIS and the final approval. This was all made clear to the government. Okay. Now, how does the Padilla issue help you? The Padilla issue is only helpful if this court opts not to directly reopen the case. If the court does not instruct the BIA to reopen so that Ms. Montano can go before the IJ and simply adjust her status, at the very least, what the court should do is instruct the BIA to reissue a valid order of removal that corrects the Padilla problem. And by doing so, it eliminates one of these issues, one of these procedural roadblocks that the government has repeatedly tried to litigate as one of the reasons Ms. Montano can't get relief. Throughout the course of proceedings, Your Honor, because of the papers filed before this court, the government said, no, no, no, no, no. The BIA gave 30 days. That was correct. She somehow overstayed. And that's a reason she can't get any relief under the sun. By, at the very least, reissuing a valid order of removal that gives the full 60 days, it eliminates the voluntary departure problem that the government has been trying to use as a wedge to keep Ms. Montano from getting the relief that she's clearly eligible to apply for. So it just eliminates an obstacle? A serious obstacle that we know is going to be a problem if the government gets a chance to go before the BIA. Okay. Now, what's your basis for, on the first point, on the merits, sort of, what would be the basis for us to send it back to the BIA to order the BIA to entertain a petition? In this case... A new motion to reopen. It wouldn't actually be, Your Honor, to allow her a chance to file a new motion to reopen willy-nilly. It would be to actually instruct the court, the BIA, to reopen proceedings so that she can go before the BIA. And what's the basis for doing that? Because this court would be effectuating an executive agency order that deems her eligible to apply for relief. This court has jurisdiction to hear cases. It's absolutely not a requirement under the Castillo case. It's not a requirement that a petitioner file a motion to reopen because it's not an appeal of right. It's not a statutory requirement for her to be eligible to have this court's jurisdiction and have this court act. And in fact, if you look at the practical consequences in this case, if, for example, the court were to remand without any instruction whatsoever before the BIA, it is quite not only possible, but it's quite probable that the government will continue to raise these procedural roadblocks, whether they be voluntary departure or the other thing, before the BIA. If the BIA does not correct, self-correct the Padilla problem, and if the BIA believes whatever procedural roadblock that the government throws up and then finds a non-reviewable discretionary basis for refusing to reopen the case because it didn't have any instruction from this court, Ms. Montano's one bite at the apple. She's given one chance to file a vial motion to reopen. That would be used up, and this court wouldn't have jurisdiction in that case to correct the error at that point. So it's a very grave consequence that's absolutely not required given the fact that an executive agency has already determined she's eligible to apply for this relief. Mr. Young, let me ask you a question about that that may reflect my lack of understanding of immigration procedure. You got into this court by seeking review of the BIA's refusal to cancel removal based on exceptional and unusually extreme hardship to a family member. That's how you got here. What you're now arguing, having gotten here on that basis, is that we ought to send it back to BIA on a different basis that wasn't raised below, that's not part of the case that was brought here. Does this court have jurisdiction to step away from the issues you brought to it and address a wholly new problem and give any direction to the BIA? Yes, Your Honor. The normal requirements for exhaustion, there are clear exceptions for them. First of all, as stated in Castillo, it's not a statutory requirement that Ms. Montano have filed a motion to reopen for this court to review the case, take jurisdiction and act. Secondly, the remedy has obviously changed. I mean, it's not for this court to grant the petition for review and then force you to go back to review some husband. That's not the correct remedy. So once this court has jurisdiction, it can tailor the remedy. There's actually a small line of cases with Castillo, and I think maybe Alcaraz is another of those cases, Your Honors, where when there's been a change of events after the BIA's determination, the court has actually exercised its jurisdiction to remand in those cases. And here, it's actually, the facts are even stronger than in both of those cases. In Castillo, there was this argument about whether the Nicaraguan government, you know, there was some fact finding that the Ninth Circuit had to be briefed because you're running out of time. This case is much stronger because you have the executive agency determination that you can effectuate. So for those reasons, Your Honor, I believe the court should intervene. Okay. We'll give you a minute on rebuttal. Thank you. I'll hear from the government. May it please the court. Good morning, Your Honors. My name is Jonathan Robbins, and I'm here on behalf of the Respondent Attorney General in this matter. I want to clarify some of the things that my colleague over here talked about during the course of his argument because, well, I certainly understand the argument that he's making because, to be sure, this particular case has some pretty sympathetic circumstance because the petitioner is a victim of circumstance in this case. There's really a big muddle about the proper civil procedure in this case, and I think Your Honor alluded to it before. Their self-petition for relief under the provisions which implement the Violence Against Women Act is a brand new application that's being presented to this court for the very first time. They're not presenting it to us. Well, yes, they are. They're telling us about it. They're telling us they have the availability of that relief. Right. But that petition's not before us.  Well, you know, if you look in our case law, you'll see in many instances where we'll at least stay the mandate and give the petitioner a chance to go back to the VA to file a motion to reopen and whatnot. The same case of the mediation all the time when there's a potential for adjustment under another provision. In many of those instances, the government joins. That's true, Your Honor, and I'd like to see the petitioner here file this VAWA petition with the board, but they haven't filed it. Well, but she can't because she needs your help. Look, first of all, this notion that the government wouldn't join in with the joint motion to reopen, they haven't filed a request for a joint motion to reopen with the DHS. You have to take steps to actually file something. You can't just, I mean, you have to do something official to show that you've exhausted your remedies. They haven't filed a motion to reopen with the board. You have to give the agency a chance to either grant or deny it. You know, the indications in this case... So the government's sympathetic to her potential motion, is that what you're telling me? I don't know, but the very fact... What more do you need to know? Well, they have to file a request with DHS, and the DHS has to be able to say either we join or we don't join. But you have to give the agency a chance. You can't just bypass the administrative form completely and take it to this court. Well, I mean, you're correct in that the VAWA petition is not before us. You're absolutely right. It's only before us in the sense, as we know, it's a potential avenue of relief for her in a separate administrative proceeding. That's correct, but again, the issue here is whether or not this court has jurisdiction to order remand where the court doesn't have jurisdiction to review... This request for judicial notice, that's not actually what it is. It's a request to consider extra record evidence. If you want to make that VAWA petition part of the administrative record, you've got to file it with the agency. Then it can come up and it can be part of the administrative record. It can't be part of this case. No, it can't be part of this case. This court does not have jurisdiction to review that. That's strictly prohibited by statute under 1252B4A of the Immigration and Nationality Act, which unequivocally and unambiguously says that the Court of Appeals only has jurisdiction to review the administrative record upon which the final order of remand was based. Nobody's disputing that. Well, I think they are. I mean, it's a different way of looking... It's just like I said. There are many instances where we... I've been on panels where we've stayed the mandate to give the petitioner a chance to go back to the BIA. They brought this to our attention because there's ex... The father has just become a citizen. It can petition. It can file an adjustment petition. Judges, can you take steps to allow us to proceed this way? And we do that. I agree, but you don't remand cases ordering them... No, I'm not... He's talking about... I mean, that's not the point. That's what he's asking for. So is there any... Let's cut to the chase. The question is whether or not... You say... You start out by saying that this petitioner is the victim of circumstances. All right, so one of the remedies we often do is we deny a petition, but we stay the mandate to give the petitioner an opportunity to move before the board to reopen. And we do know that those petitions to reopen will turn enormously on whether or not the government opposes or not. So what do you... In order to give this victim of circumstances a shot along with DHS to evaluate it, what would you recommend in this case? Okay, well, let me answer that question in just one second. They've had a long time to... I don't want to hear about long time. Just tell me what you would recommend. Well, I know that after mediation was done, they approached us about holding this case in abeyance so that they could file a motion to reopen. And the counsel before me, who I spoke to, said, okay, file something with the DHS, either a joint motion to reopen, and we'll take a look at it. But nothing was ever filed. So, you know, it's not the policy of the Department of Justice to wait around while hypothetical documents might be filed. I understand. Yeah, so, I mean... But you're saying you're not interested because they slept on their rights or waived it or what? Well, I'm saying that's why we're here on this particular petition for... Well, I mean, I can't speak... Would it help us to ask you to sit down with you, the two counsel in this room, sit down with a mediator and work out, see if you can work something out? I know you have to consult with your client, DHS. I don't have the authority to tell the DHS what... I know you don't, but do you think that's a worthwhile effort to engage in? Well, I don't think so. Once again, I wasn't party to mediation in this case. I don't either. It is confidential, and I don't know what was discussed during it. I'm not asking you to reveal it. I'm asking you, as I said, in counsel in the courtroom today... Well, I'm... Well, once again... To get right on a blank slate, for as far as you're concerned, your bosses will overrule you, maybe, or not. Who knows? Your client will overrule you. I'm just trying to find out what we... what you think we have the ability to do to facilitate whatever might productive come out of this today. Well, the problem that I have with saying that we should hold this case in abeyance while we look for something else is that they've had so long to file a motion to reopen... We're not going to stay forever. We're going to stay, say, 60 days. If we gave the party 60 days to try to work it out, do you think it could be worked out? Would a mediator help in those respects? I think that depends on what you mean by worked out. In terms of filing something with the board and exhausting the remedies, I mean, they've had an opportunity to do that for well over a year now. I mean... Okay. So your position is that we should deny the petition, issue the mandate, and what happens? Does she have any, under those circumstances, does she have any remedy on the VAWA petition after that? Well, yes. She can always either file a motion to reopen with the board if the DHS doesn't join in a motion to reopen. You have to give the agency a chance to say... We understand that. We're familiar with Ventura. We know all of those issues. But there are people involved here, and sometimes the government is willing to try and find a way to at least test whether or not a petitioner has a chance of staying in the United States or not. That's true, Your Honor, but the government does that when the petitioner shows any... I'm just asking you how to apply it in this case, okay? Does it mean anything at all that the... What is it called? The CSIS, whatever they're called, that they found her eligible for VAWA, really? Well, I think, I mean, I certainly think from looking at it that there's the potential finally for a form of relief for her where she would have otherwise had relief, but that doesn't mean she's going to get relief. You still have to apply for adjustment of status based on that approved I-360 petition. That's a key hurdle, correct? Yes, yes. That's a major hurdle. And that's something that the board would have to address. But once again, I want to reiterate, and remanding this case with orders to look at this case... The question from the bench is about staying the mandate to give the parties, you and the other side, a chance to try to work it out or for them to file before the board. Nobody's talking about mandates at this point, other than suspending it for a defined point of time. For a limited amount of time, I see I'm hesitant because I wasn't... I'm not asking you. But yes, the court, of course, has authority to stay the case. I mean, I don't think that's... Are you telling us it's worthless, or that you just don't know what the outcome would be? I wouldn't say that it's worthless. A short stay would be appropriate. But, I mean, we have to have some sort of indication by the petitioner that something is going to be done here. I mean, there's been no action for so long... We're hearing your complaints, presumably counsel is hearing your complaints. We haven't decided this case at all. We're exploring avenues, you know, all the way from outright denial to something else. Counsel, if we just denied the petition, issued the mandate, would she then have a Padilla problem in trying to go forward? The Padilla problem is a little sticky, but she never challenged the board's shortening of the order from 30 days to 60 days. That would have been an error had she actually challenged it when she petitioned for review of that decision. But you can't petition for review, not challenge that particular decision, and then in another proceeding, go back and challenge the proceedings, which you didn't address the first time. It would have been error under Padilla-Padilla, I mean, but at the time the board issued that decision, Padilla-Padilla wasn't there, and it wasn't exactly a clear legal question. Well, it sounds as though you are saying, yes, she would have a Padilla problem if we just denied the petition and issued the mandate. No, no, no. Well, she would have overstayed her voluntary departure, but under the provisions, under the self-petition provisions for applying under the Violence Against Women Act, the particular petition, which gets rid of that bar. So it's really not too much of an issue in this case, but ultimately that's something that the board would have to determine, and that's why it has to go before the agency. And I want to clarify something here. You know, this is almost a little stickler to legal points, saying that they have to file a motion to reopen and that this court doesn't have authority to remand because there's no jurisdiction. But it's not just six of one half doesn't have the other. If this court issues a remand where it doesn't have jurisdiction, that can have consequences for the government down the road. For example, if, you know, there was an Egyptese litigation, remand seems to indicate that there was an error by the government, and that's not a, you know, remand works out more than what a no-jurisdiction. You seem to be stuck on remand, that we're just going to, you know, unilaterally, willy-nilly remand the case back to the FBI. That's what I'm making. Well, but that's, they can ask for the moon. Well, they can, but I'm not... No, they can ask for anything. They can ask, but I don't know why they can ask. To go right to the IJ. You know, this is the whole question. There's no harm in asking, right? That's the way we're going to do it. Well, there's no harm in asking, but I want to make sure that, you know... I think they've made your point. We've got it. With respect to... You're over time, but... Oh, I'm sorry. You have something important to say. It's nothing important. It's just with respect to the cancellation of removal claim on which this actual petition is based. She's obviously not going to be able to show hard facts. Okay. Thank you very much for your time. Thank you. Thank you, counsel. We're not the first case we've had before us on immigration law. We do try to cut through it. Not to make light of this, but you have to understand that we see a lot of these cases now, and from time to time, and the Ninth Circuit has been open with this, with DHS and its program, that at times there are cases where the circumstances call out for some kind of way to accommodate some resolution. We don't know if in a particular case that's the right one, but the only way we have a conversation with you all about it is at oral argument because the briefs don't address it. So, you know, whatever comes from the bench is trying to address issues that are percolating in our minds. It doesn't mean we've decided the case. We don't even talk to each other before the case comes on for you to know what it is, what your thinking is. You're informing us. You're giving us information. Okay. Counsel, you have a few minutes. You have a minute. I just want to clarify a couple of the factual kind of suggestions made by respondents. It's your time. Yes. Go ahead and do it. This is not counsel's fault because they weren't involved. He wasn't involved in a particular suggestion, but we actually have attempted to work with DHS in this case. It is absolutely incorrect to suggest that we have not. Did you file a motion to join? We requested with DHS. We called them and we asked them to join us in various motions. The most recent one was to join in a motion to remand to correct the Padilla problem, and the respondent wouldn't even do that. If you look just at the papers, I'm not saying that the court oughtn't stay remand. I'm just saying that the practical consequence, given the government's position through this case, is that they said, we don't actually think that the vow motion to reopen is going to succeed. So unless we get some actual assurance from the government that they're actually going to join, simply throwing us back before the BIA where they can oppose and throw up whatever procedural roadblocks that they want, that's a real serious consequence. One question before you sit down. Your opponent said that he doesn't think there is a Padilla problem because of provisions that apply to a vow or petition. Do you disagree with that? I do disagree with that. One of the cases I submitted for the court in the Rule 20HA letter is the SOTO2 case. In the SOTO2 case, it was a motion to reopen case just like this one where the court did remand to consider the Padilla problem. So the fact that it wasn't a direct appeal from a petition review wasn't a bar for the court then. Okay. Thanks. All right. Thank you. All right. The case argued as submitted.
judges: Fisher, Paez,, Campbell